UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    *Plaintiff,*

v.

MARK GOJCAJ,

    *Defendant.*

_____/

CRIMINAL NO. 17-mj-30335

Hon. R. Steven Whalen

### GOVERNMENT'S WRITTEN PROFFER IN SUPPORT OF ITS REQUEST FOR DETENTION PENDING TRIAL

The Government moves, pursuant to 18 U.S.C. §3142 for the pretrial detention of defendant MARK GOJCAJ, on the basis that he is a clear danger to the community and a significant flight risk. Furthermore, based upon the nature of the charges, pursuant to 18 U.S.C. § 3142(e)(3), there is a rebuttable presumption that the defendant is a danger to the community, and that no condition or combination of conditions will reasonably assure the defendant's presence as required. The government maintains that MARK GOJCAJ should be detained pending trial.

In addition to the information contained in the Pretrial Services Report of the U.S. Pretrial Services Officer, the government proffers the following supplemental

1

information pursuant to 18 U.S.C. § 3142 (f):

## I. INTRODUCTION

### A. Charges

On July 11, 2017, Defendant MARK GOJCAJ was charged in a criminal complaint with possession of a controlled substance with the intent to distribute, in violation of Title 21, United States Code, Section, 841(a)(1).

### B. Background

Defendant is a career criminal with a very long history of engaging in large-scale drug trafficking and other criminal activities. Most recently, on March 14, 2017, Warren Police (WPD) seized a bag containing 10 individually wrapped baggies of cocaine and five pills containing Amphetamine/Dextroamphetamine 20mg from a parking lot on Stephens Road.  Video surveillance of the parking lot revealed that earlier that day showed Defendant had parked his vehicle at that location, entered the business, and left the location as short time later with the bag containing cocaine was left behind. WPD initiated an investigation and for several weeks, WPD surveilled the Defendant and watched him engage in what appeared to be hand-to-hand drug transactions.

On May 5, 2017, a search warrant executed at a residence associated with

the Defendant led to, among other things, the seizure of a small quantity of drugs, a large quantity of "cut", over $6600 in cash; and numerous items associated with the distribution of drugs. For instance, digital scales, numerous small Ziploc bags and cocaine "cut".  In addition, agents seized an envelope containing numerous Fifth Third Bank deposit slips.  The slips, covering the time-period between June 6, 2016 to April 25, 2017 – the ten-month period immediately preceding his WPD arrest for drug distribution show a total deposit of approximately $120,000.

### C. Criminal History

As detailed below, Defendant is a career offender with a significant and lengthy criminal history, which begins at age 18 and continues throughout his adult life.  He has at least seven felony convictions, four of which are for serious drug trafficking related offenses and one for being a felon in possession of firearms.  He has eight additional, mostly felony charges that were dismissed or where no disposition has been reported.

### D. Prior Violent Offense History

In May 2015 Defendant was charged, but not convicted in a very serious domestic violence case.  The offense occurred the same day defendant was released from serving a sentence for a serious drug felony, and while he was on probation.

It is an all too familiar circumstance that domestic violence victims refuse to testify or cooperate against their abusers and charges are dismissed irrespective of the merits of the charges.  Here, Defendant's conduct was witnessed by several individuals, including his sister and daughter. The severity of the injuries sustained by the victim were observed, documented, and photographed by the police. Thus, to the extent it bears on the defendant's dangerousness and his inability to comply with terms and conditions of release, there is a sufficient indicia of reliability.

On May 13, 2015, Harper Woods Police responded to a 911 call and were dispatched to a residence "with loud screaming and sounds of a female being hit." Officers were advised that Defendant had been released from the Macomb County jail at approximately 4:30 a.m. and went directly to the VICTIM's (his child's mother) home, forced entry and assaulted VICTIM.  Officers observed visible signs of injury, including bruising to her neck, bruising and swelling to her face, and bleeding from the ears.  VICTIM also complained of involuntary urination, pain to her back and left lateral chest. The police also observed "apparent broken bones". VICTIM was taken to the hospital. Defendant fled the scene.  Police also observed numerous other visible injuries (left eye swollen and bruised; abrasions/contusions on front and left side of neck; swelling and knots on the top and back of the head;

4

left temple bruised and swollen; a one inch laceration on top of her head; left forearm bruised; one inch laceration on top of left hand; right inner wrist swollen and bruised; bruising to the back of the lower neck; bruising on inner right foot and ankle; bruising behind left ear; left upper arm bruising; right leg near the knee bruised; bruising and scratches to right shoulder; bruising to lower middle back; rear left side of ribs bruised (later determined to be fractured). Police photographed these injuries. (See Exhibit 1: photo of Victim's face).

VICTIM described the savage beating she suffered at the hands of the Defendant and his 17 year old daughter, which included being lifted up by the neck and thrown nearly 12 feet down from the second story of the residence. Defendant was interviewed and provided a different version of events, attributing the assault to an unknown male. There were others present at the time this offense occurred, including Defendant's sister and daughter. Defendant's sister was interviewed and initially lied to corroborate Defendant's false statement. She then recanted the false version (Defendant broke into VICTIM's home, there was no unknown male; Defendant assaulted VICTIM), substantially corroborated VICTIM's version, and advised Defendant had provided her with the false story for the police. Defendant's daughter and another female provided information that substantially corroborated

5

the VICTIM, as well, including the Defendant telling them all to lie about what happened and the creation of a false story. Defendant sent threatening texts to VICTIM's phone and called VICTIM's family members. Charge were dismissed on October 13, 2015.

### E. Substance Abuse History

While on state pretrial release (bond) in Macomb County for this offense, Defendant tested positive for the use of cocaine on four occasions: May 10, 2017 (amphetamines, cocaine); May 11, 2017 (cocaine); May 13, 2017 (cocaine); and June 15, 2017 (cocaine). (See Exhibit 2: Drug test results). Defendant's use of illegal drugs during his pretrial release exhibit his inability to follow the terms and conditions of pretrial release, and present the defendant as a danger to the community.

### F.   Maximum Penalties

This offense carries a maximum punishment of 20 years' in prison, however, Defendant's prior drug convictions subject him to enhanced penalties and, pursuant to 21 U.S.C. §851, the statutory maximum penalty that applies to this offense is 30 years' incarceration.

In terms of a preliminary look at the sentencing guidelines, Defendant's prior

drug convictions (convictions for Delivery/Manufacture of a Controlled Substance in September 2014, October 2004 and November 2004) subject him to the Career Offender guideline provisions set forth in U.S.S.G. §4B1.1. (See Exhibit 3: MDOC Offender Tracking Information System Offender Profile). Under the career offender guidelines, Defendant has an offense level of 34, criminal history category VI, which yields an advisory sentencing guideline range of **262-327 months**' incarceration if convicted at trial.

## II. ARGUMENT

The government must prove by a preponderance of the evidence that the defendant poses a risk of flight, and by clear and convincing evidence that the defendant is a danger to the community. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); *United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990). It is sufficient for purposes of a bond hearing that the government provide a reasonable basis for assessment of danger or flight risk presented by the particular defendant.

> Congress clearly did not envisage that a formal evidentiary hearing would be needed to resolve competing claims under the flight presumption. While the Act is silent concerning how the government is to proceed at a detention

> hearing, the thrust of the legislation is to encourage informal methods of proof. Congress did not want detention hearings to resemble mini trials....Congress explicitly left open what kinds of information would be a sufficient basis for release, choosing to leave the issue to the judgment of the Courts on a case-by-case basis.

*United States v. Martir*, 782 F.2d 1141, 1145 (2nd Cir. 1986).

Where, there has been a probable cause finding that the defendant committed an offense specified in 18 U.S.C. § 3142(e)(3), a rebuttable presumption of detention arises. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985).

The Sixth Circuit has observed that "the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Stone,* 608 F.3d at 945. Even "run-of-the-mill" drug dealers, in cases where there are no allegations of violent conduct, are subject to the statutory presumption in favor of detention. *Id.* at 947 (citing cases). Moreover, courts have found that drug trafficking is a serious offense that, in itself, poses a danger to the community. *Id.* (citing *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989)).

Although the presumption imposes upon a defendant only a burden of production and does not shift the burden of persuasion, when defendant produces no

8

evidence to rebut the presumption, the presumption alone is sufficient to support the conclusion that a defendant should be detained. *Stone*, 608 F.3d at 945; *United States v. Alatishe*, 768 F.2d 364, 371 n.14 (D.C.Cir. 1985). Even where the defendant comes forward with some evidence, the presumption of detention "does not disappear entirely," but is one of many factors to be considered and weighed by the district court because the presumption "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Stone*, 608 F.3d at 945, *quoting United States v. Mercedes*, 254 F.3d 433, 436 (2nd Cir. 2001).

The law is well-settled that the government may keep a defendant in custody for the sole purpose of securing his presence at trial. *Stack v. Boyle*, 342 U.S. 1, 4 (1951). Defendant is a career offender who is facing up to 30 years in prison, and a recommended guideline range of 262-327 months in prison. He has a long history of drug trafficking and violence. He has a history of violating conditions of release – including the commission of crimes while on release, and the use of illegal drugs. The lengthy penalties awaiting him upon conviction – and the incentive to flee such penalties, which are much more severe than he has ever faced before – are matters established by a clear preponderance of the evidence presented. *United States v.*

9

*Jackson*, 823 F.2d 4, 5 (2nd Cir. 1987); (the government must establish by a preponderance of evidence that a defendant is a flight risk to detain him), *See also United States v. Araneda*, 899 F.2d 368, 370 (5th Cir. 1990); *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990).

## III. CONCLUSION

Based on the above proffered facts and the information contained in the Pretrial Services Report, the United States believes that there is no condition or combination of conditions that will reasonably assure the appearance of Defendant as required and the safety of any other person and the community. It is therefore respectfully requested that the Court order the detention of Defendant pending trial pursuant to the Bail Reform Act.

Respectfully submitted,

DANIEL L. LEMISCH
Acting United States Attorney

*s/Saima S. Mohsin*
SAIMA S. MOHSIN
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9163
Saima.Mohsin@usdoj.gov

*s/Eric M. Straus*
ERIC M. STRAUS
Assistant United States Attorney