UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                    Case No. 17-20500
                                                  HON. AVERN COHN

MARK GOJCAJ,

    Defendant.
_____/

## **MEMORANDUM AND ORDER DENYING MOTION TO QUASH (Doc. 31)**

I.

This is a criminal case. Defendant is charged in a one count indictment with possession with intent to distribute controlled substances, in violation of 18 U.S.C. § 841(a)(1), (b)(1)(C).

Before the Court is defendant's motion to quash the search warrant executed at 27286 Bunert, Warren, Michigan on the grounds the affidavit accompanying the application for search warrant was not supported by probable case. Defendant also seeks suppression, as fruits of the poisonous tree, the evidence obtained during the execution of the search warrant (cocaine, more than $6,500 in cash, digital scales, baggies, and other indicia of drug trafficking). The Court held a hearing on January 22, 2018, on the motion. The motion is DENIED for the reasons stated on the record following oral argument and as supplemented by the comments which follow.

II.

On May 4, 2017, a judicial officer of the 37th Judicial District Court in Warren,

Michigan authorized a search warrant for the Bunert residence. The application for the search warrant was supported by the affidavit of a Warren police officer. On May 5, 2017, the search warrant was executed by members of the Warren police department. As noted above, evidence of drug activity was found and seized.

III. Parties' Arguments

Defendant's motion is premised on the argument that his status as a drug dealer alone is insufficient to provide probable cause to search the Bunert residence.[1] Defendant also says that the affidavit lacks information to show a connection between the Bunert residence and defendant's status as a drug dealer.

The government agrees that a suspect's status as a drug dealer standing alone does not give rise to probable cause, i.e. a fair probability, that drugs will be found in the suspect's residence. However, the government says that the affidavit has ample factual assertions which, under the totality of the circumstances, supports probable case. In other words, the government says that there is a nexus between the Bunert resident and defendant's drug activities.

IV. The Law

The law is well settled. Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." "[S]o long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover

---

[1] Defendant also says that the government's response was not timely filed and therefore should not be considered. The Court, in its discretion, accepts the government's response.

2

evidence of wrongdoing, the Fourth Amendment requires no more." Illinois v. Gates, 462 U.S. 213, 236, (1983) (quoting Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)).  In order to conclude that an affidavit establishes probable cause, the issuing judge must find that "given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Id. at 238, 103 S.Ct. 2317.

To meet the nexus requirement of probable cause, "the circumstances must indicate why evidence of illegal activity will be found in a particular place."  United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004) (en banc).  In other words, "the affidavit must suggest 'that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought' and not merely 'that the owner of the property is suspected of a crime.' "  United States v. McPhearson, 469 F.3d 518, 524 (6th Cir.2006) (quoting Zurcher v. Stanford Daily, 436 U.S. 547, 556, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978)).  "There must, in other words, be a nexus between the place to be searched and the evidence sought." United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)

Regarding known drug dealers, the Sixth Circuit has said:

> We have acknowledged that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." United States v. Jones, 159 F.3d 969, 975 (6th Cir. 1998) (citation omitted). Thus, in some cases, we have permitted judges to infer a fair probability of finding evidence in a residence even though the affidavit did not state that such evidence had been observed directly. See, e.g., id. at 974–75. We have never held, however, that a suspect's "status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home." United States v. Frazier, 423 F.3d 526, 533 (6th Cir. 2005). Rather, we have required some reliable evidence connecting the known drug dealer's ongoing criminal activity to the residence; that is, we have required facts showing that the residence had been used in drug trafficking, such as an informant who

3

observed drug deals or drug paraphernalia in or around the residence. Compare Jones, 159 F.3d at 974–75 (finding probable cause to issue a warrant where confidential informant made drug purchases from defendant, was at defendant's residence during monitored drug transactions, and observed defendant in possession of cocaine), United States v. Ellison, 632 F.3d 347, 349 (6th Cir. 2011) (inference was proper because reliable confidential informant had "observed someone come out of [the defendant's] residence, engage in a drug transaction, and then return into the residence"), and Berry, 565 F.3d at 339 ("Although a defendant's status as a drug dealer, standing alone, does not give rise to a fair probability that drugs will be found in defendant's home, there is support for the proposition that status as a drug dealer plus observation of drug activity near defendant's home is sufficient to establish probable cause to search the home." (internal citation omitted)), with Frazier, 423 F.3d at 532 (inference was not proper because affidavit failed to establish informants' reliability and informants had not "witnessed [the defendant] dealing drugs from his [new] residence," just his old residence).

United States v. Brown, 828 F.3d 375, 383–84 (6th Cir. 2016)

## V. The Affidavit

The affidavit contains the following factual assertions:

1. Defendant is a known drug dealer with three prior drug convictions and one prior drug arrest.

2. On March 14, 2017, a bag containing drugs was found in a parking lot by an employee. Video cameras showed defendant in a truck at the parking lot before the drugs were discovered. Video also showed defendant returning to the lot about 45 minute later (after the drugs were discovered). Defendant searched the area where his truck had been parked and searched his truck for several minutes. A license plate search showed the truck was registered to defendant Mark Gojcaj at a Roseville address, 27101 Antonio Drive.

3. After the discovery of the drugs and identification of defendant, the affiant began an investigation of defendant through law enforcement databases. Defendant

4

was connected to the Antonio Drive address, the Bunert address, and another Roseville address, 15386 Hill Court.

4. On March 22, 2017, affiant heard from an anonymous source (SOI) that defendant was dealing drugs, drove a black 2017 Laramie truck and was living at the Bunert residence with a woman named Leah and her son. The SOI also said he saw defendant burying items in the backyard at Bunert and that he saw other individuals retrieve items from the gas tank cover on defendant's truck.[2]

5. On March 23, 2017, affiant obtained a warrant to track defendant's truck.

6. On March 29, 2017, affiant saw defendant at various locations, eventually going to Bunert. While at Bunert, defendant exited his truck, left it running, and came back a few minutes later and traveled to Hill Court. Another officer observed defendant conduct a hand to hand transaction[3] in the street in front of the Hill Court address with an unknown person in a vehicle. After the transaction, defendant immediately returned to Bunert.

7. On April 6, 2017, officers saw defendant conduct another hand to hand transaction at Hill Court with an unknown person in a vehicle.

---

[2]Defendant is correct that this information does not necessarily mean that defendant is dealing drugs because the SOI does not say what he saw being buried or placed in the gas tank. However, the government says it is unusual activity which when considered in context likely means that the SOI was referring to contraband. The Court does not draw a conclusion either way.

[3]Defendant, however, says that prior to the controlled purchases, officers observed what was described as "hand to hand transaction," implying that defendant could have exchanged something other than drugs. The Court, on the other hand, finds that the "hand to hand transaction" could reasonably be interpreted to be a drug transaction in the context observed by the officers.

5

8. The week of April 17, affiant heard from a confidential informant (CI) that a white male named Mark was selling cocaine in Warren. The CI had the same phone number for defendant that police had already obtained.

9. Officers then arranged for three drug transactions with defendant and the CI. After the transactions, defendant eventually, but not immediately, went to the Bunert address.

10. During the time of surveillance, defendant consistently returned to the Bunert address at night.

## VI. Conclusion

In light of the above, there is a sufficient nexus between defendant and the Bunert address such that it was more likely than not that evidence of drug activity would be at the residence. Defendant was seen at Bunert both before and after drug transactions. Considering that totality of the circumstances, including the level of detail of defendant's observed activities, defendant's known prior drug activity, the corroborating information from confidential sources, and defendant's consistent presence at Bunert, the affidavit is supported by probable cause.

Even assuming the affidavit fell short of establishing probable cause, the warrant was valid under the good-faith exception in United States v. Leon, 468 U.S. 897, 926 (1984). Under Leon, subject to limited exceptions, evidence will not be excluded if it was obtained by an officer acting in objectively reasonable reliance on a search warrant, even if the warrant is subsequently invalidated. Id. Suppression of evidence seized under an invalidated warrant will only be upheld under good faith analysis if the supporting affidavit "is so lacking in indicia of probable cause as to render official belief

in its existence entirely unreasonable." United States v. Washington, 380 F.3d 236, 241 (6th Cir. 2004). Here, an objective officer could reasonably rely on the affidavit to believe probable cause existed to issue the search warrant for the Bunert residence.

SO ORDERED.

                                                      S/Avern Cohn
                                                     AVERN COHN
                                                     UNITED STATES DISTRICT JUDGE

Dated: February 5, 2018
      Detroit, Michigan